UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KBJR, Inc., a Delaware corporation,  Civil No. 09-1186 (DWF/LIB)

        Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

Radio Frequency Systems, Inc., a foreign
Corporation,

        Defendant,

and

Broadcast Tower Technologies,
Inc., a Florida corporation,

        Cross-Claimant,

v.

Radio Frequency Systems, Inc., a foreign
Corporation,

        Cross-Defendant.

_____

Bradley D. Fisher, Esq., Fisher Bren & Sheridan LLP; Douglas A. Lange, Esq., Foran Glennon Palandech Ponzi & Rudloff PC; Marc F. Katalinic, Esq., and Brian G. Cunningham, Esq., Nielsen, Zehe & Antas, PC, counsel for Plaintiff.

Ted A. Johnson, Esq., and Thomas A. Pearson, Esq., Cronan Pearson Quinlivan & Thompson, PA, counsel for Defendant and Cross-Defendant Radio Frequency Systems, Inc.

Lawrence M. Rocheford, Esq., Thomas L. Cummings, Esq., and Darwin S. Williams, Esq., Jardine Logan & O'Brien PLLP; and Robin C. Merritt, Esq., Hanft Fride, counsel for Cross-Claimant Broadcast Tower Technologies, Inc.

_____

**INTRODUCTION**

This matter is before the Court on a Motion for Partial Summary Judgment brought by Defendant Radio Frequency Systems, Inc. ("RFS"). For the reasons stated below, the Court grants the motion.

**BACKGROUND**

Plaintiff KBJR, Inc. ("KBJR") is the owner and operator of various network affiliate television and radio stations, including KBJR-NBC in Duluth, Minnesota. (Compl. ¶ 4.) RFS designs, manufactures, and sells transmitting antenna. (*Id*. ¶ 6.) Broadcast Tower Technologies, Inc. ("BTTI") markets, brokers, and sells RFS antennas to customers in the United States. (*Id*. ¶ 7.)

KBJR's parent company entered into a shared service agreement with another company to broadcast their respective affiliate signals from the same broadcast tower antenna. (Dep. of Robert Wilmers ("Wilmers Dep.") at 25, 27-28.) KBJR decided to purchase an antenna that could accommodate both of KBJR's analog and digital signals in addition to the signals of the second station, KDLH-CBS. (*Id*. at 26; 30-32.) The new antenna needed to accommodate two ultra-high frequency broadcast channels. The new antenna also had to fit on KBJR's existing broadcast tower in Duluth, Minnesota. (*Id*. at 32-33.)

KBJR retained BTTI to assist in acquiring an appropriate antenna, and BTTI worked as a "general contractor" to coordinate the placement of a new antenna. (*Id*. at 34-35, 50.) BTTI informed KBJR that RFS might have a solution that would allow

KBJR to broadcast two signals within the constraints of its existing tower infrastructure. (*Id*. at 42-43.) In April 2005, BTTI issued a Proposal for the "KBJR/KDLH DTV channel 19/33 antenna" with "Terms and Conditions of Sale" attached. (*Id*. at 52-53; Compl. ¶ 8, Ex. A.) The Proposal provided that BTTI would sell an RFS broadband digital antenna and pedestal to KBJR for a total cost of $157,500. (*Id*. at 52-53; Compl. ¶ 8, Ex. A.) KBJR decided to purchase the RFS antenna. (Wilmers Dep. at 55-56.) The parties agree that the Terms and Conditions attached to the Proposal constitute the contract between the parties.

According to the Proposal, the antenna was to be delivered in approximately 14 weeks. (Compl. ¶ 8, Ex. A.) The antenna was ultimately delivered and installed in June 2007. (Compl. ¶ 9; Dep. of Andres Gonzalez ("Gonzalez Dep.") at 120-121.) Shortly after the antenna's installation, the RFS antenna malfunctioned. (Gonzalez Dep. at 121-122.) RFS directed BTTI to remove the antenna from the tower so that it could be repaired. (*Id*. at 144-145.) RFS determined that the malfunction of the antenna was caused by a "factory defect." (*Id*. at 155.) RFS agreed to repair the antenna in Duluth, Minnesota. (*Id*. at 156.) While the antenna was being repaired, RFS provided a "standby" antenna. (*Id*. at 161-162.)

The RFS antenna was restarted on or about September 3, 2007, and, within hours, it failed a second time. (*Id*. at 169-70.) After the second failure, RFS again attempted to repair the antenna. (*Id*. at 182.) RFS assigned two engineers to repair the antenna. In total, RFS invested over $300,000 in its effort to repair the antenna. (*Id*. at 287-88.)

3

The antenna failed a third time on or about May 21, 2008. (Compl. ¶ 11.) After the third failure, RFS offered to accept the antenna's failure as a warranty claim and to repair the RFS antenna at its factory in Australia with KBJR paying shipping costs. (*Id*. at 225.) In the alternative, RFS offered to give KBJR a $70,000 credit towards another antenna. (*Id*. at 225-226.) KBJR rejected both offers and replaced the antenna from a different seller. (*Id.* at 230; Wilmers Dep. at 83.)

On or about May 20, 2009, KBJR filed the present Complaint. In its Complaint, KBJR asserts claims for breach of contract, breach of warranty, and product liability against BTTI and claims for negligence, breach of warranty, breach of implied warranty, and product liability against RFS. BTTI filed a cross-claim against RFS seeking indemnification and/or contribution against RFS in the event that RFS is found to be at fault for KBJR's loss and BTTI pays any sum to KBJR, and for failure to pay for goods and services. (Doc. No. 35.) KBJR and BTTI have settled their dispute and entered into a *Pierringer* release. (Doc. No. 53.) Pursuant to stipulation, the Court dismissed KBJR's claims against BTTI with prejudice. (Doc. No. 54.) BTTI's cross-claims against RFS remain. RFS now moves for partial summary judgment, seeking dismissal of all claims insofar as they seek damages in an amount exceeding the price charged by RFS for the antenna that is the subject of this action.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

RFS asserts that the Terms and Conditions of the sales agreement establish a limited remedy for its failure as the seller to repair or replace the faulty antenna—the price for the defective equipment or service. There is no dispute that the relevant sales agreement for the RFS antenna contains the following Terms and Conditions:

> 3. WARRANTY - Seller warrants that any equipment sold hereunder shall be free from defects in materials and workmanship for one (1) year after shipment. To make a claim under this warranty; the Buyer must notify the Seller in writing immediately after the Buyer discovers or should have discovered the defect and receive authorization to return the defective equipment to the Seller. *Seller's sole and exclusive liability shall be to replace or repair the defective equipment and ship it back to the Buyer*.

> This warranty does not apply to defects not caused by the Seller, such as acts of God, abuse, improper installation or alteration. Equipment supplied as a warranty replacement shall be warranted for the remainder of the original warranty period.
>
> No express warranties and no implied warranties whether of merchantability or fitness for any particular purpose (except as to title) other than those set forth above shall apply to equipment sold by Seller and no waiver, alteration or modification of the foregoing shall be binding against Seller unless signed by an executive officer of Seller.
>
> 4. LIMITATION OF LIABILITY AND LIMITATION OF ACTIONS - whether or not caused by Seller's negligence, Seller shall not be liable for any cover damages that exceed an amount equal to ten percent (10%) of the contract price contained in this agreement or for any indirect, special, incidental or consequential damages however caused. *Seller's obligation to repair or replace equipment as set forth above shall be the Buyer's sole and exclusive remedy for breach of warranty or negligence. If Seller fails to repair or replace as aforesaid, Seller's entire liability shall not exceed the Seller's price for the defective equipment or service.* Any legal proceeding brought under or as a result of or arising out of this Agreement must be brought within one (1) year after the cause of action arises.

(Compl. ¶ 8. Ex. A ¶¶ 3, 4 (emphasis added).)

KBJR does not dispute that the above provisions, on their face, limit KBJR's remedy in this action. Instead, KBJR argues that RFS waived its right to enforce the contractual limitation of liability. In particular, KBJR asserts that beginning with the first failure of the antenna, RFS failed to enforce the terms of the contract by *not* requiring KBJR to ship the antenna back to RFS for repairs at KBJR's expense. KBJR asserts that under the sales agreement its sole remedy was to ship the antenna back to RFS for repairs and that KBJR was responsible for the cost of a standby antenna.

In support of its waiver argument, KBJR points out that after the first failure, RFS sent its own engineer to Duluth to work on the repairs and provided KBJR with a standby

6

antenna to use during the repairs. KBJR further points out that after the antenna failed a second time, RFS again sent its engineers to Duluth to attempt to repair the antenna and paid for a standby antenna. KBJR asserts that RFS intended to induce KBJR not to cancel the agreement so that RFS could make inroads into the North American market. KBJR further asserts that RFS waived the limitation of damages provision by attempting to fix the antenna and providing KBJR with a back-up antenna and, as a result of this waiver, KBJR should be allowed to pursue all of its damages, including the cost of replacing the RFS antenna and associated incidental and consequential costs.

Under Minnesota law, waiver is defined as "the intentional relinquishment of a known right." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (2009) (citations and quotations omitted). Waiver is "the expression of an intention not to insist on what the law affords." *Id*. "When a party acts in a way that is inconsistent with the terms of a contract, a fact finder can reasonably conclude that a party waived those contractual provisions." *Id*. The intent to waive may be actual or inferred. *Id*. Whether a party's conduct constitutes a waiver is generally a fact question and depends on the circumstances involved in each case. *Id*. To avoid summary judgment, KBJR must present specific facts demonstrating a genuine issue of waiver for trial. *Id*.

Here, nothing in the record suggests an express waiver by RFS. For example, KBJR does not point to any specific statements made by RFS indicating that RFS intended to waive the limitation of damages provision in the sales agreement. Instead, KBJR argues that RFS impliedly waived the limitations provision by its conduct, as described above. Viewing the evidence in the light most favorable to KBJR, the Court

determines that no reasonable juror could conclude that RFS waived the limitation of damages provision. First, RFS's attempts to repair the antenna prior to asserting its contractual rights that limited its liability are consistent with the terms of the sales agreement. The sales agreement contemplates that RFS would "repair or replace" defective equipment and provides that "*[i]f* Seller fails to repair or replace" the antenna, "Seller's entire liability shall not exceed the Seller's price for the defective equipment or service." (Compl. ¶ 8, Ex. A ¶¶ 3, 4 (emphasis added).) Thus, RFS's efforts to repair the antenna prior to invoking the limitation of liability provision are consistent with the terms of the sales agreement.[1] Second, to the extent that RFS attempted to resolve problems with the antenna and to maintain its relationship with KBJR by going beyond its obligations under the sales agreement (by, for example, absorbing the price of a replacement antenna and repairing the antenna on site) does not, alone, demonstrate that RFS knowingly relinquished its rights under the sales agreement. *See, e.g., Valspar*, 764 at 368 (holding that summary judgment was properly entered on issue of waiver where businesses cooperated in an effort to resolve product performance issues under a contract; explaining that a party's attempts to satisfy a customer, without more, does not indicate an intention to surrender contractual rights). For the above reasons, the Court grants

---

[1]  The fact that RFS's efforts to repair the antenna were not inconsistent with the terms of the sales agreement distinguishes this case from *Pollard v. Southdale Gardens of Edina Condominium Assoc., Inc.*, 698 N.W.2d 449 (Minn. App. 2005), a case upon which KBJR relies. In *Pollard*, the Minnesota Court of Appeals reversed summary judgment on a waiver claim, explaining that where there was a lack of enforcement of a no pet rule in a condominium complex, a genuine issue of fact exists as to whether the condominium association waived its right to enforce the rule. 698 N.W.2d at 453-54.

RFS's motion for summary judgment on the issue of waiver and concludes that, as a matter of law, RFS did not waive the limitation of liability provision in the sales agreement. Accordingly, KBJR's claims against RFS are limited by the contractual limitation of liability provision.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. RFS's Motion for Partial Summary Judgment (Doc. No. [37]) is **GRANTED**.

2. All damages sought under the claims asserted by KBJR against RFS are covered by the limitation of liability provision in the sales agreement.

Dated: February 4, 2011          s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge